Philip WILLIAMSON; Itzik Rief; Ronda Kirlin; Thomas Painter, Plaintiffs–Appellants,

v.

GENERAL DYNAMICS CORPORATION, Defendant–Appellee.

No. 98–55783.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1999

Filed April 12, 2000

Michael A. Conger, Monaghan and Conger, San Diego, California; Richard H. Benes, San Diego, California, for the plaintiffs-appellants.

Richard T. Franch, Jenner & Block, Chicago, Illinois, counsel for the defendant-appellee.

Before: D.W. NELSON, BOOCHEVER, and T.G. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

Phillip Williamson and three former General Dynamics ("GD") employees appeal the district court's order dismissing their lawsuit with prejudice. They claim that the district court erred because: (1) the Fair Labor Standards Act ("FLSA") does not preempt their common law fraud and misrepresentation claims; (2) they deserved an opportunity to amend their state claims in light of the preemption concerns; (3) California's three-year statute of limitations has not run; and (4) they have stated a valid claim for fraud under California law. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The appellants are former long-term employees of GD who were improperly classified as "salaried exempt" from California and federal overtime laws. On September 28, 1993, the appellants were entitled to join the settlement of a FLSA-based, class-action lawsuit concerning GD's failure to pay overtime wages, *Sena v. General Dynamics Corp.* In order to participate in the *Sena* settlement under the FLSA, the appellants were required to sign and return an opt-in form by November 15, 1993.

The appellants failed to join the *Sena* settlement because GD allegedly threatened to harm their jobs if they joined. Management told the employees that by joining the lawsuit they would be committing "career suicide," "cutting their balls off," and other similar statements. GD made representations that it would act in a "law abiding" way with regard to wages and that the appellants had "viable careers" with the company. As early as 1991, however, GD allegedly knew that it would have to sell or close the Convair Division where the appellants worked. Yet as late as April 1994, the GD executive in charge of the division wrote: "Let me once again make it clear that we have not

been sold, [and] there has been no decision to shut down this plant...." On July 1, 1994, GD announced it was closing the Convair Division.

The appellants' lawyers have filed the following lawsuits on behalf of other parties:

### Argo

In April 1995, 101 GD employees who had not opted into *Sena* filed a state court lawsuit, *Argo v. General Dynamics & Arthur Veitch,* alleging state civil rights violations, tortious interference, and fraud. GD was unable to remove the case to federal court because the plaintiffs also had named GD's managers as co-defendants. On May 1, 1997, a jury awarded 97 employees compensatory damages of $1.77 million and punitive damages of $99 million. The state trial court denied GD's motion for a new trial and affirmed the jury's damages award. The case is on appeal. The appellants are not parties to that lawsuit.

### Harman

In November 1995, GD employees filed a FLSA lawsuit in federal court attempting to recover unpaid overtime. Over 135 employees opted-into this lawsuit, *Harman v. General Dynamics,* including the four named appellants in this case. *Harman* sought back wages from 1992 to 1996 under FLSA, but not under a fraud theory. A proposed settlement in *Harman* was before the district court.

### Adams

In March 1997, the *Argo* plaintiffs filed another lawsuit in state court, *Adams v. General Dynamics.* They alleged claims of wage and career fraud, but did not name GD managers as co-defendants. GD removed *Adams* to federal court on diversity grounds. The case was assigned to Judge Enright (the district judge in this case), who on June 26, 1997, stayed the case until *Argo* becomes final. The *Adams* plaintiffs abandoned their appeal to this court.

### Williamson

On June 27, 1997 (the day after Judge Enright stayed *Adams* ), GD employees filed a lawsuit in state court alleging fraud and misrepresentation (the "wage fraud" and "career fraud" claims) under California law. On August 7, 1997, GD removed the case to federal court on diversity grounds. Judge Enright, sua sponte, issued an order staying this case until *Argo* becomes final because of res judicata concerns. Both sides, however, objected to the stay because the plaintiffs in *Williamson* and *Adams* are not the same. On September 10, 1997, the district court lifted the stay.

On November 26, 1997, after briefing and hearings on the issue, the district court ordered the *Williamson* plaintiffs to plead their fraud claims with more particularity under Fed.R.Civ.P. 9(b). On December 24, 1997, the appellants filed their first amended complaint. The amended complaint makes two basic claims:

(1) *Wage fraud*—GD pledged to be "honest, trustworthy, and law abiding" with regard to paying correct overtime (because of a government contracts scandal), yet stopped paying overtime. The district court termed this claim, "wage fraud."

(2) *Career fraud*—GD represented that this was a "career job," that there would be business "all the way into the year 2000," and that as of April 1994 "we have not been sold, [and] there has been no decision to shut down this plant." Yet the appellants claim that documents introduced in *Argo* proved those statements to be false, that GD knew it was going to close the plant when it told its employees not to jeopardize their careers with GD by opting into the *Sena* lawsuit. The documents in *Argo,* however, are under a protective order, and GD refuses to release them for this case. Finally, the appellants argue that they did not discover the falsity of these statements until GD announced that it was closing the plant on July 1, 1994.

The district court labeled this claim, "career fraud."

After the appellants amended their complaint, GD filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). On April 3, 1998, the district court granted the motion, finding that the fraud claims were: (1) too vague; (2) barred by California's three-year statute of limitations; and (3) preempted by the Fair Labor Standards Act ("FLSA"). The appellants timely appealed.

## II. STANDARD OF REVIEW

■ We review the district court's decision regarding preemption de novo. *See Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1211 (9th Cir.1999).

We review a dismissal based on statutes of limitations de novo. *See Ellis v. City of San Diego*, 176 F.3d 1183, 1188 (9th Cir. 1999).

■ We review a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *See Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999). If support exists in the record, a dismissal may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998).

## III. DISCUSSION

■ This case presents an issue of first impression in this Circuit—whether the FLSA preempts a common-law fraud claim. Given the lack of discussion of the wage fraud claims in the appellants' briefs or at oral argument, we find that the appellants have abandoned their wage fraud claims. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988) ("It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned."). Therefore, the remainder of this opinion only will address the appellants' career fraud claims. We believe that the appellants' career fraud claims are not preempted because the appellants were never subject to FLSA's anti-retaliation provision. We also find that the appellants' career fraud claims are not barred by the statute of limitations and are not too vague to state a claim. In light of our ruling on preemption, we will not address whether the district court erred in not allowing the appellants leave to amend their complaint.

### A. Preemption

■ Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl.2. "Consideration of the issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the states [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

■ The Ninth Circuit has based its preemption analysis on the Supreme Court's three categories: (1) *express preemption*—"where Congress explicitly defines the extent to which its enactments preempt state law"; (2) *field preemption*—"where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy"; and (3) *conflict preemption*—"where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Industrial Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir.1997) (citing *English v. General Elec.*

**1150**

Co., 496 U.S. 72, 78–80, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)).

Although we adhered to this categorical framework in *Industrial Truck,* we recognized that the categories are not " 'rigidly distinct.' " *Industrial Truck,* 125 F.3d at 1309 (quoting *English,* 496 U.S. at 79 n. 5, 110 S.Ct. 2270). In *Cipollone,* a plurality of the Court said, "[t]he purpose of Congress is the ultimate touchstone of preemption analysis." *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608 (citations and quotations omitted). *Cipollone* said that Congress's intent may be express or it may be implied through the structure and purpose of a statute. *See id.* The Ninth Circuit has echoed the Court's focus on Congress's purpose: "Congressional intent to preempt state law must be clear and manifest." *Industrial Truck,* 125 F.3d at 1309 (citing *Law v. General Motors Corp.,* 114 F.3d 908, 909–10 (9th Cir.1997) (citations omitted)).

### 1. *FLSA*

#### a. *Purpose*

The Fair Labor Standards Act of 1938 contains the following finding:

> The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; . . . .

29 U.S.C. § 202(a) (1994). Many authorities have recognized that the principal purpose of the FLSA is " 'to protect all covered workers from substandard wages and oppressive working hours.' " *Adair v. City of Kirkland,* 185 F.3d 1055, 1059 (9th Cir.1999) (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)). Furthermore, we have recognized that "[t]he FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers." *Adair,* 185 F.3d at 1059. In *Barrentine,* the Supreme Court distinguished the FLSA from other federal statutes designed to strike a balance between employees and employers:

> In contrast to the Labor Management Relations Act, which was designed to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests collectively, the FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive " '[a] fair day's pay for a fair day's work' " and would be protected from "the evil of 'overwork' as well as 'underpay.' "

*Barrentine,* 450 U.S. at 739, 101 S.Ct. 1437 (quoting *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))).

#### b. *Savings Clause*

In addition to protecting workers by establishing a minimum wage and maximum hours, the FLSA contains a "savings clause" that enables states and municipalities to enact more favorable wage, hour, and child labor legislation. *See* 29 U.S.C. § 218(a).[1]

---

1. The statute says:

No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter.

29 U.S.C. 218(a).

### c. Anti–Retaliation Provision

Finally, the FLSA contains an "anti-retaliation provision" that prohibits employers from retaliating against employees for filing complaints about violations of the Act. It states that it is unlawful:

[T]o discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

■ We recently held that the FLSA's anti-retaliation provision protects not only employees who have filed complaints in court or with an agency such as the Department of Labor but also employees who have complained to their employers. *See Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir.1999) (en banc), *cert. denied*, — U.S. ——, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000). *Lambert* said that the FLSA "is a remedial statute ... [that] must be interpreted broadly." *Lambert*, 180 F.3d at 1003 (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944)). Furthermore, *Lambert* stated that the purposes of the anti-retaliation provision are: (1) "to provide an incentive for employees to report wage and hour violations by their employers"; *id.*; (2) " 'to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance' "; *id.* at 1004 (quoting *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir.1989)); and "to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Id.*

### 2. District Court's Decision

As a threshold matter, the district court failed to analyze this case under the Supreme Court's categorical framework. The district court conceded that the "authorities are not uniform on this issue," yet it found that the FLSA preempted the appellants' fraud claims. The district court asserted four reasons: (1) The FLSA is a comprehensive statute, except for allowing states to provide more generous wage and hour laws; (2) "The FLSA is the exclusive remedy for claims that duplicate or are the equivalent of rights protected by the FLSA" (citing *Lerwill v. Inflight Motion Pictures*, 343 F.Supp. 1027 (N.D.Cal.1972)); (3) The appellants' fraud claims "reduce to claims that [the appellants] would lose their jobs if they participated in the *Sena* FLSA action," and the FLSA's anti-retaliation provision is broad enough to protect their rights; and (4) The wage fraud claims duplicate a claim that they were not paid overtime under FLSA. The district court concluded that the FLSA "does not allow employees to circumvent the statutory remedy by re-labeling their claims as common law torts."

### 3. Preemption Analysis

#### a. Express and Field Preemption

■ GD does not argue that the FLSA expressly preempts a common law fraud claim. No statutory language expressly preempts the appellants' claims. GD also does not argue that FLSA preempts the entire field of law. The statute contains a "savings clause" that allows states and municipalities to enact stricter wage and hour laws. *See* 29 U.S.C. § 218(a). Although this lawsuit does not invoke California's wage and hour laws, the FLSA's "savings clause" is evidence that Congress did not intend to preempt the entire field. Under field preemption, it does not matter whether the common law claim conflicts with the statute. *See Industrial Truck*, 125 F.3d at 1309. The common law claim is preempted because the statute provides exclusive remedies. While the FLSA may be a comprehensive remedy, as the district court argues, the "savings clause" indicates that it does not provide an exclusive remedy.

b. *Conflict Preemption*

■ There are two types of conflict pre-emption: (1) "where it is impossible to comply with both state and federal requirements"; and (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Industrial Truck,* 125 F.3d at 1309. GD argues that the appellants' fraud claims present an obstacle to the FLSA's purposes and enforcement, citing the statute's "language, structure, and underlying goals." GD, however, does not cite any Ninth Circuit case that supports its contention that fraud claims are preempted by the FLSA.

GD's best argument, given the Ninth Circuit's broad reading of the statute in *Lambert,* is that the FLSA's anti-retaliation provision covers the fraud claims. If the district court is correct in arguing that (1) the anti-retaliation provision covers these claims and (2) the FLSA is the exclusive remedy for claims duplicated by or equivalent of rights covered by the FLSA, then the fraud claims would be an obstacle to the enforcement of the FLSA. The district court's assumptions, however, are incorrect.

■ Even under *Lambert*'s broad reading of the FLSA's anti-retaliation provision, the appellants' career fraud claims are not covered. *Lambert* interpreted the anti-retaliation provision to include employees, not only who have filed complaints with the courts or the appropriate agency, but also who have complained to their employers. *See Lambert,* 180 F.3d at 1004. The FLSA refers to employees who have "filed any complaint or instituted or caused to be instituted any proceeding under this chapter, or ha[ve] testified or [are] about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). Basically, *Lambert* expanded the definition of "filing" to include a complaint to a supervisor.

The facts of *Lambert* are much different from this case. The *Lambert* employees called the Department of Labor for advice, complained to their supervisors orally, hired an attorney, and notified their employer in writing of an FLSA violation. *See Lambert,* 180 F.3d at 1007. After these complaints, the employees were fired and replaced. *See id.* at 1001–02. In *Lambert* we held that "so long as an employee communicates the substance of his allegations to the employer" the anti-retaliation provision applies, though we declined to articulate a rule for the degree of specificity necessary to constitute filing a complaint within the meaning of the statute. *Id.* at 1008.

In this case, the appellants never filed a complaint with an agency or the courts. They never complained to their supervisors of a FLSA violation or notified the Department of Labor. They never instituted or caused to be instituted any proceedings because they were not parties to the class-action litigation in *Sena.* They were invited to opt-into that lawsuit, but relied on GD's allegedly fraudulent assertions that they held career jobs and that the Convair Division would remain open. The appellants argue the fraud occurred after the failure to pay overtime and after *Sena* settled the FLSA claims. Thus, even under *Lambert,* GD's allegedly fraudulently conduct would not be actionable under the anti-retaliation provision.

At oral argument, GD contended that two recent cases from other circuits, *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35 (1st Cir.1999) and *Kendall v. City of Chesapeake, Virginia,* 174 F.3d 437 (4th Cir. 1999), suggest that the FLSA governs the appellants' claims. As with *Lambert,* we find both cases distinguishable.

In *Valerio,* the First Circuit found that the plaintiff's written complaint to her supervisor constituted a complaint under the FLSA's anti-retaliation provision. *See Valerio,* 173 F.3d at 45. The court did not subject the plaintiff's state law claims of retaliation to a preemption analysis because it did not consider whether the state retaliation claims survived once it had reinstated the federal retaliation claim. *See id.* at 46 n. 7. The appellants in this case never complained to their supervisor, and

their state fraud claims do not merely duplicate possible federal retaliation claims. *Valerio* is like *Lambert* and therefore not factually analogous to this case.

In *Kendall*, the Fourth Circuit found that the plaintiffs could not use a § 1983 claim to enforce their rights to overtime compensation under the FLSA. *See Kendall*, 174 F.3d at 443. The plaintiffs in *Kendall* signed a release of their rights under the FLSA, so they attempted to enforce their rights under § 1983. The court conducted a § 1983 analysis, concluding that the FLSA's "unusually elaborate" remedial scheme prevented a § 1983 claim. *See id. Kendall* is not a case about federal preemption of state law; rather, it is about whether another federal statute (Section 1983) can support a claim that clearly falls under the FLSA. Furthermore, *Kendall* never reached the merits of the issue in this case—whether a state fraud claim is preempted by the FLSA. In *Kendall*, the district court dismissed the plaintiffs' state law claim on jurisdictional grounds but without prejudice. *See id.* at 443–44. Neither the district court nor the appellate court addressed whether the FLSA preempted the state fraud claims.

In this case, the district court relied on an even weaker precedent, *Lerwill v. Inflight Motion Pictures*, 343 F.Supp. 1027 (N.D.Cal.1972), in order to conclude that the appellants' fraud claims are preempted because the "FLSA is the exclusive remedy for claims that duplicate or are equivalent of rights protected by the FLSA." *Lerwill* is a dubious authority. It is a 1972 district court case that is not even about preemption. *Lerwill* never mentions the word "preemption," and it does not rely on a preemption framework. It was about the plaintiff's effort to get a more favorable remedy. The plaintiff sued for breach of contract of a collective bargaining agreement because of unpaid overtime.

*See id.* at 1028. This theory directly implicated the FLSA's statutory provisions.

In this case, however, GD's allegedly fraudulent conduct was not covered by a FLSA provision. Nor are the appellants in this case avoiding the FLSA in order to seek a more favorable remedy. The FLSA's anti-retaliation provision actually offers broader remedies than state fraud claims because the anti-retaliation provision allows the recovery of attorneys' fees. The other remedies are the same. In 1977, Congress amended section 216(b) to allow plaintiffs who prove retaliation under section 215(a)(3) to obtain "legal and equitable relief" under state law.[2] At least one other circuit has interpreted this relief to include compensatory, punitive, and emotional distress damages. *See, e.g., Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 284 (7th Cir.1993); *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir.1990). The only advantage of a state fraud claim over a FLSA claim is a longer statute of limitations (three years compared to two years). *Compare* Cal.Civ.Proc.Code § 338(d) *with* 29 U.S.C. § 255(a).

The district court's preemption analysis does not hold up under the categorical preemption framework. There is definitely no express or field preemption. And there is no conflict preemption because the anti-retaliation provision does not apply even under *Lambert*'s broad definition. Under a categorical preemption analysis, the career fraud claims are not preempted.

c. *The Purpose of the FLSA*

Mindful that we should not adhere only to a categorical preemption analysis, we also find that the career fraud claims are not contrary to the purpose of the FLSA. GD argues that the purpose of the FLSA was to protect employers as well as em-

---

**2.** Section 216(b) says: "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal and equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

ployees, and therefore the appellants' fraud claims would upset the careful balance established by the statute. Indeed, Congress amended the FLSA in 1947 in order to mitigate the impact of the statute on American industry by limiting retroactive relief and including a statute of limitations. *See* 29 U.S.C. §§ 251–261. Despite these amendments, the Supreme Court and the Ninth Circuit have consistently found that the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees. *See Barrentine,* 450 U.S. at 739, 101 S.Ct. 1437; *Adair,* 185 F.3d at 1059.

The appellants' career fraud claims do not conflict with purpose of the FLSA of protecting employees. Nor do they upset by any balance created by amendments to the statute. Fraud claims by employees do not conflict with the FLSA any more than claims for wrongful death, assault, or murder. Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA. That is not the case here. Thus, neither the district court nor GD has presented a convincing case that the career fraud claims conflict with the purposes of the FLSA.

### d. *Other Analogies*

GD also argues that the *Sena* settlement was under the exclusive jurisdiction of Judge Brewster. If GD allegedly committed fraud in inducing the appellants not to join the settlement, GD contends that the appellants should have gone to Judge Brewster and asked him to reopen the settlement agreement. GD supports this argument with a securities case in which California plaintiffs who were part of a class action lawsuit were barred from filing a lawsuit in California court for fraud and misrepresentation based on the allegation that the defendant encouraged them not to opt-out of the class action. *See In re VMS Secs. Litig.,* 103 F.3d 1317, 1320 (7th Cir.1996). The Seventh Circuit held that the exclusive remedy in that case was

for the California plaintiffs to return to the district court. *See id.* at 1323.

As a procedural matter, GD makes this exclusive jurisdiction argument for the first time on appeal. Even if the argument is not waived, it is substantively flawed. In securities cases such as the one cited by GD, the plaintiffs had the opportunity to opt-out of the class and were therefore subject to the court's jurisdiction. The appellants in this case, however, were never under the exclusive jurisdiction of Judge Brewster. They were never parties to the *Sena* settlement. They only had the opportunity to *opt-in* to the settlement. Furthermore, the appellants (along with 136 GD employees) asked GD to reopen the *Sena* settlement just three weeks after learning the Convair Division was closing. GD's attorneys denied their requests, testifying to this fact during the *Argo* litigation. We therefore deny GD's request to take judicial notice of documents from *Sena* and reject GD's argument that Judge Brewster had exclusive jurisdiction over the appellants' claims.

Better analogies appear in the preemption cases involving the field of nuclear energy regulation. In a 1990 preemption case, the Supreme Court held that the anti-retaliation provision of the Energy Reorganization Act ("ERA") did not preempt a state law claim for intentional infliction of emotional distress. *See English,* 496 U.S. at 90, 110 S.Ct. 2270. *English* said: "[W]e think the District Court failed to follow this Court's teaching that '[o]rdinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law.'" *Id.* at 89, 110 S.Ct. 2270 (quoting *California v. ARC Am. Corp.,* 490 U.S. 93, 105, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989)). Furthermore, *English* said:

> [W]e find no "clear and manifest" intent on the part of Congress ... to pre-empt all state tort laws that traditionally have been available to those persons who, like petitioner, allege outrageous conduct at the hands of an employer.... [That]

would require us to conclude that Congress has displaced not only state tort law, which is at issue in this case, but also state criminal law, to the extent that such criminal law is applied to retaliatory conduct at the site of a nuclear employer. *Id.* at 83, 110 S.Ct. 2270. *English* is instructive not only because it is a recent Supreme Court precedent on preemption but also because *Lambert* used the ERA's anti-retaliation provision as an analog for interpreting the scope of the FLSA's anti-retaliation provision. *See Lambert,* 180 F.3d at 1005 n. 3 (citing *MacKowiak v. University Nuclear Sys., Inc.,* 735 F.2d 1159 (9th Cir.1984) and its interpretation of the ERA's anti-retaliation provision).

Finally, there is a simpler way to look at the preemption issues in this case. The appellants' career fraud claims are nothing more than fraud claims about a plant closing. We have typically allowed state fraud claims when companies allegedly lie or misrepresent the status of a plant closing. *See Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1418 (9th Cir. 1991) (finding that the employees' claims of fraud, misrepresentation of facts, and intentional infliction of emotional distress were not preempted by the Labor Management Relations Act). This case is about whether GD is guilty of fraud and misrepresentation because of its statements about the appellants' "career jobs" and about not closing the Convair Division. The *Sena* settlement of the FLSA claims was merely an impetus for this alleged fraud and may factor into the amount of damages to which the appellants are due.

The preemption issues in this case have important federalism concerns, and we are reluctant to allow a plaintiff to circumvent the FLSA's comprehensive statutory remedies. Preemption issues, however, must be decided on a case-by-case basis. In this case, the appellants' career fraud claims are not categorically preempted because the appellants never complained or instituted any proceedings under the anti-retaliation provision; the career fraud claims also are not contrary to the FLSA's purpose of protecting employees. Thus, after conducting a thorough preemption analysis and consulting analogous legal precedents, we reverse the district court's finding of federal preemption as to the career fraud claims.

### B. *Statute of Limitations*

The district court also argued that the appellants failed to file their fraud claims within the three-year statute of limitations under Cal.Civ.Proc.Code § 338(d). The district court argued that the appellants, who filed their complaint on June 27, 1997, "were on notice of the purported fraud in September 1993" when they could have opted-in to the *Sena* settlement. The district court found that at the time of the *Sena* settlement the appellants "had the necessary information upon which to conclude that the company had not properly compensated them for all hours worked."

California Civil Procedure Code § 338(d) provides that a cause of action for fraud "is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Accrual may also be defined as when the "the plaintiff discovers, or has reason to discover the cause of action." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 457, 981 P.2d 79 (1999). Once the statute of limitations is tolled, § 338(d) "does not in any way limit a plaintiff's ability to recover for events that occurred more than three years prior to accrual or filing." *County of Marin Ass'n of Firefighters v. Marin County Employees Retirement Ass'n,* 30 Cal.App.4th 1638, 36 Cal.Rptr.2d 736, 744 (1994).

In this case, the appellants did not have reason to discover GD's alleged fraud and misrepresentations until the company announced that the plant was closing on July 1, 1994. The *Sena* settlement is irrelevant to the appellants' knowledge of GD's alleged fraud. They had no reason to doubt GD's statements about their jobs or the status of the Convair Division until the

announcement of the plant closing. The only thing the appellants were on notice of in September 1993 was that GD may not have paid them enough overtime. They learned nothing at that time about their job security or the plant closing. The district court's holding about the statute of limitations misstates the appellants' case, conflating the fraud claims with a garden-variety FLSA claim. The appellants could not have discovered the alleged fraud until July 1, 1994. Therefore, given that the appellants filed their claim on June 27, 1997, they were within the three-year statute of limitations.

### C. Failure to State a Claim

 The district court found that the appellants' allegations were too vague to support their fraud claims, relying on the following dicta: "'Promises too vague to be enforced will not support a fraud claim any more than they will one in contract.'" (quoting Rochlis v. Walt Disney Co., 19 Cal.App.4th 201, 23 Cal.Rptr.2d 793, 800 (1993), disapproved on other grounds, Turner v. Anheuser–Busch, Inc., 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994)). Under our de novo review of the district court's dismissal, we reverse in light of the admonition that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Morley, 175 F.3d at 759.

 The appellants alleged two basic fraud claims: fraudulent misrepresentation and fraudulent concealment.[3] There

are two principal reasons why the district court erred in granting GD's 12(b)(6) motion. First, Rochlis is distinguishable. In that case, the court found that promises of "appropriate" financial rewards and "active and meaningful" participation in creative decisions were too vague. See Rochlis, 19 Cal.App.4th at 215, 23 Cal.Rptr.2d at 800. In this case, however, the appellants presented numerous statements by GD that they had "career jobs" and the Convair Division would remain open through the year 2000. Vague promises about financial rewards and creative control are far different from specific promises of job security.

Second, the outcome of Argo plays a pivotal role in proving that GD knowingly misrepresented facts and concealed information about the plant closing with an intent to prevent the appellants in this case from joining the Sena settlement. In Argo, the trial judge denied GD's motion for a new trial because "there was substantial evidence before the jury that [GD] misled its employees and clear and convincing evidence that there was fraud involved." Although the appellants in this case concede that Argo "was tried on narrower fraud claims than alleged by the Williamson plaintiffs," they allege that "Williamson includes the same type of fraud claims which were tried to verdict favoring the plaintiffs in Argo." The evidence in Argo about GD's allegedly knowing misrepresentations, however, is under seal, and GD refuses to release it for this lawsuit. We assume from GD's refusal

---

**3.** Misrepresentation, under California law, requires that: (1) the defendant must have made a representation as to a past or existing material fact; (2) the representation must have been false; (3) the defendant must have known the representation was false when made; (4) the defendant must have made the representation with an intent to defraud the plaintiff—with the purpose of inducing the plaintiff to rely on it; (5) the plaintiff must have been unaware of the falsity of the representation and acted on the truth of the representation; and (6) as a result of relying on the representation, the plaintiff must have sus-

tained damages. See Witkin, Summary of Cal. Law (9th ed. 1998) Torts, §§ 676–677, at 778–79. Concealment requires that: (1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage. See id. at Torts § 697, at 799–800; Cal. Civ.Code §§ 1572(3), 1710(3).

that the evidence in *Argo* is probative of the alleged fraud in this case.

 In this case, the district court's instincts were correct. The district court issued a sua sponte order staying this case pending the outcome in *Argo* because of res judicata concerns, but it lifted the stay when both parties objected because the parties are different. *See Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995) (noting that res judicata only applies if the parties are the same). If *Argo* becomes a final judgment, however, the appellants may be able to preclude GD from relitigating some of the fraud issues in this case by invoking offensive non-mutual collateral estoppel.[4] *Argo* is still on appeal in the California courts. Since the decision in *Argo* is not final and documents in *Argo* are critical to proving fraud in this case, we recommend that on remand the district court issue a stay in this case pending the outcome in *Argo.* Once *Argo* has become final, the parties can litigate the collateral estoppel issues and agree to some sort of sealed discovery of the *Argo* documents. Given the importance of *Argo* to this case, however, the district court's 12(b)(6) order on vagueness grounds was premature.

## IV. *CONCLUSION*

For the forgoing reasons, we reverse the district court's 12(b)(6) order finding that the FLSA had preempted the appellants' career fraud claims, that the California statute of limitations had run, and that the appellants' claims were too vague. We remand this case for further proceedings.

REVERSED and REMANDED.

---

4. "Under California law, '[a] party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous lawsuit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the previous suit.' " *In re Russell,* 76 F.3d 242, 244–45 (9th Cir. 1996) (quoting *In re Joshua J.,* 39 Cal.App.4th 984, 46 Cal.Rptr.2d 491, 497 (1995)).