259 F.3d 1148 (9th Cir. 2001)
 PONDEROSA DAIRY, PLAINTIFF-APPELLANT,
v.
WILLIAM J. LYONS, JR.,* SECRETARY, DEPARTMENT OF FOOD & AGRICULTURE, STATE OF CALIFORNIA, AND A.J. YATES, DEPUTY SECRETARY, DEPARTMENT OF FOOD & AGRICULTURE, STATE OF CALIFORNIA, DEFENDANTS-APPELLEES.
HILLSIDE DAIRY INC., A&A DAIRY, INC., A NEVADA S CORPORATION, MILKY WAY FARM, INC., A NEVADA S CORPORATION, AND, L&S DAIRY, INC., A NEVADA S CORPORATION, PLAINTIFFS-APPELLANTS,
v.
WILLIAM J. LYONS, JR., SECRETARY, DEPARTMENT OF FOOD & AGRICULTURE, STATE OF CALIFORNIA, AND A.J. YATES, DEPUTY SECRETARY, DEPARTMENT OF FOOD & AGRICULTURE, STATE OF CALIFORNIA, DEFENDANTS-APPELLEES.
 No. 99-16981, No. 99-16982
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted May 15, 2001
Filed August 9, 2001
 
 1
 [Copyrighted Material Omitted]
 
 
 2
 Counsel Charles H. English, Jr., Ober, Kaler, Grimes & Shriver, Washington, D.C.; John H. Vetne, Newburyport, Massachusetts, for the plaintiffs-appellants.
 
 
 3
 Andrea Hackett Henningsen, Steefel, Levitt & Weiss, San Francisco, California, for the defendants-appellees.
 
 
 4
 Warren W. Goedert, Nevada State Dairy Commission, Reno Nevada; Robert F. Bony, Nevada Attorney General's Office, Reno, Nevada, for the amicus curiae.
 
 
 5
 Appeal from the United States District Court for the Eastern District of California Garland E. Burrell, District Judge, Presiding D.C. No. CV-97-01185-GEB (JFM) D.C. No. CV-97-01179-GEB (JFM)
 
 
 6
 Before: Joseph T. Sneed and Barry G. Silverman, Circuit Judges, and John W. Sedwick, District Judge.**
 
 SEDWICK, District Judge:
 
 7
 Appellants (collectively "Ponderosa and Hillside") are dairies located outside California that sell their raw milk to processors located in California. Ponderosa and Hillside brought suit against William J. Lyons[1] and A.J. Yates (collectively "California"), Secretary and Undersecretary of the California Department of Food and Agriculture, following the 1997 enactment of amendments to California's milk pooling plan.[2] The 1997 amendments made out-of-state dairies, such as Ponderosa and Hillside, subject to the pooling plan for the first time. Three issues are presented on appeal: whether§§ 144 of the Federal Agriculture Improvement and Reform Act ("Farm Bill") insulates California's 1997 pooling amendments from Commerce Clause challenges; whether appellants' Equal Protection Clause causes of action were sufficiently pled; and whether the pooling plan amendments violate the Privileges and Immunities Clause of the Constitution.
 
 BACKGROUND
 
 8
 California has operated a unique milk price stabilization and marketing program since the 1930's. The program classifies milk products into five categories: Class 1 includes fluid products such as the several varieties of milk; Class 2 includes yogurt, cottage cheese and heavy cream; Class 3 includes frozen milk products; Class 4a includes butter and non-fat dry milk; and Class 4b includes cheeses. The program establishes minimum prices for raw milk depending upon the class of product for which the milk will be used. The program was created to address destructive trade practices that resulted because processors that predominantly made Class 1 products could afford to pay more for raw milk than could processors making other classes of products.[3]
 
 
 9
 The California legislature enacted the Gonsalves Milk Pooling Act of 1967 to address market disparities that resulted from the existing price stabilization and marketing program. California's pooling plan seeks to eliminate pricing inequalities by pooling the revenues generated by the sale of raw milk and redistributing the revenues among all producers according to a blended price that is based on milk usage across the state regardless of the use for which a particular producer's milk is purchased. At the same time, the minimum prices that are used to calculate each processor's obligation to the pool for raw milk ("pool obligation") vary according to the endproduct produced. Accordingly, Class 1 processors typically have a larger pool obligation than do processors of other end products. In sum, the pooling system reduces the competition among dairy farmers for contracts with Class 1 processors and reduces the incentives Class 1 processors have to extract concessions from the dairies that supply their milk.
 
 
 10
 The pooling plan redistributes the pooled revenues according to a quota system that includes both a quota and an overbase price. California producers are allocated quota share based upon their historic Class 1 milk production. Quota shares can also be purchased from other producers. Owning quota is beneficial because quota price exceeds overbase price by $1.70/hundredweight and producers are paid at quota price for milk contributed to the pool up to the amount of quota shares they own. The lesser, overbase price is paid for milk contributed to the pool in excess of quota. Consequently, many producers have elected to purchase quota shares in order to maximize the price they receive for their raw milk.
 
 
 11
 Each month, the California Department of Food and Agriculture calculates the gross amount each processor owes its various producers.[4] Processors are authorized to subtract from the gross amounts certain deductions such as transportation and regional quota allowances.[5] Where the total value of milk that a processor uses is greater than the amount the processor owes its producers, the processor pays the difference into the pool equalization fund. Conversely, a processor is paid from the pool equalization fund when the total amount the processor owes its producers exceeds the value of the milk it used.
 
 
 12
 Prior to the 1997 amendments, out-of-state producers who sold milk to California processors were not included in the pooling plan. Processors paid out-of-state producers directly and the milk purchased from those producers was not included in the processor's total pool obligation. Under the amended plan, milk purchased from out-of-state producers is counted towards each processor's total pool obligation and processors are credited the lesser of their in-plant blend price[6] or the quota price regardless of how much the processor pays the out-of-state producers.
 
 
 13
 In an order dated July 30, 1998, the district court granted California's motion to dismiss with respect to all of the causes of action raised by the two complaints save those based on the Commerce Clause of the Constitution. Pertinent to the appeal, the dismissed causes of action included claims that were premised on the Equal Protection and Privileges and Immunities Clauses of the Constitution. The Equal Protection Clause causes of action were dismissed because the district court found that they were not sufficiently pled. The Privileges and Immunities Clause causes of action were dismissed because the district court found that the pooling plan does not discriminate against nonresidents.
 
 
 14
 In an order dated July 21, 1999, the district court granted California's motion for summary judgment and dismissed the remaining Commerce Clause causes of action. The court relied on Shamrock Farms Co. v. Veneman, 146 F.3d 1177 (9th Cir. 1998), which it found stood for the proposition that §§ 144 of the Farm Bill immunizes California's pooling plan from Commerce Clause challenges. Final judgment as to each case was entered on August 3, 1999. This appeal followed.
 
 DISCUSSION
 
 15
 A. Shamrock Precludes Commerce Clause Claims.
 
 
 16
 Reviewing the district court's grant of summary judgment de novo and viewing the evidence in the light most favorable to Ponderosa and Hillside, see Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir. 1999)(en banc), we find that there were no genuine issues of material fact and the district court correctly applied the relevant substantive law. Shamrock forecloses Ponderosa and Hillside's Commerce Clause claims.
 
 
 17
 Shamrock involved Commerce Clause and Fourteenth Amendment challenges to California's milk laws. The Shamrock plaintiffs were an Arizona dairy and processor who regularly distributed packaged fluid milk in California. Their complaint alleged that California's milk composition requirements, which mandate minimum identity standards for the solids-not-fat content of fluid milk, effectively precluded them from distributing whole and skim milk in California during certain seasons of the year and from distributing low-fat milk in California during the whole year. The Shamrock plaintiffs could not meet the minimum identity standards because they did not fortify, standardize or otherwise alter the solids-not-fat content of the milk they distributed. Also at issue were fortification allowances which, according to the Shamrock plaintiffs, provided an unfair competitive advantage to in-state processors. The district court granted California's motion to dismiss and this court affirmed. Both courts found that Congress, in enacting §§ 144 of the Farm Bill, intended to protect the milk composition requirements from Commerce Clause limitations. See Shamrock, 146 F.3d at 1178, 1180.
 
 
 18
 The appellate court premised its decision on the langauge of §§ 144. Section 144 provides,
 
 
 19
 Nothing in this Act or any other provision of law shall be construed to preempt, prohibit, or otherwise limit the authority of the State of California, directly or indirectly, to establish or continue to effect any law, regulation, or requirement regarding: (1) the percentage of milk solids or solid not fat in fluid milk products sold at retail or marketed in the State of California; or (2) the labeling of such fluid milk products with regard to milk solids or solids not fats.
 
 
 20
 7 U.S.C. §§ 7254. The unanimous panel found the"any other provision of law" language persuasive and indicative of Congress' intent to create "a blanket exclusion" for California's composition requirements. See id. at 1180-81. With respect to the pricing and pooling laws, the appellate court analyzed the connection between those laws and composition requirements and found them to be "interrelated and mutually interdependent." Id. at 1182. Because of this connection, the court stated that the pricing and pooling laws "fall under the ambit of the prohibition against indirect limitations on laws, regulations, or requirements regarding milk standards" that is stated in §§ 144. Id. at 1182. As a result, the court concluded that the pricing and pooling laws were also exempt from Commerce Clause challenge. See id.
 
 
 21
 The district court applied Shamrock to this case and held that §§ 144 of the Farm Bill insulates all of California's milk pricing and pooling laws from Commerce Clause challenges, including the 1997 amendments challenged by Ponderosa and Hillside. Ponderosa and Hillside argue that Shamrock should be read narrowly and interpreted only to exempt California's fortification allowances from Commerce Clause scrutiny. It is their position that the Shamrock court borrowed "imprecise terminology" when it referred to the fortification allowances as the `pricing and pooling provisions' and did not mean to hold that all of the pricing and pooling laws were indirectly necessary to the composition standards and within the reach of §§ 144.
 
 
 22
 Ponderosa and Hillside invite us to dissect Shamrock even though that the language in Shamrock is clear. Shamrock broadly refers to the pricing and pooling laws and finds them to be closely related to California's composition requirements and protected from Commerce Clause challenges. Moreover, §§ 144 insulates the 1997 amendments despite the fact that the amendments went into effect after §§ 144 was enacted. Once Congress has exercised its Commerce Clause power and held that certain state laws are immunized from challenge, later enacted state laws are also exempt so long as the laws are consistent with the protection provided. Western & Southern Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 652-53, 101 S. Ct. 2070, 2075, 68 L.Ed.2d 514 (1981).
 
 
 23
 Ample evidence demonstrates that the pooling laws in general, and the 1997 amendments in particular, bolster California's composition requirements and are consistent with the protection provided by §§ 144. As observed in Shamrock, the legislative history of §§ 144 and the language of the pricing and pooling laws themselves demonstrate that California's pricing and pooling laws were considered to be an important element of California's milk regulatory scheme and necessary to maintain the "standards of content and purity " for milk. See Shamrock, 146 F.3d at 1182 (citing Hearing Testimony Before the Subcomm. on Livestock, Dairy and Poultry, 104th Cong., Apr. 20, 1995, and Cal. Food & Agr. Code §§ 61802(c)). Accordingly, Shamrock found that §§ 144 broadly protected California's pricing and pooling laws. See id . Nothing in the 1997 amendments requires a different conclusion in this case. In adopting the 1997 amendments, the California Department of Food and Agriculture's explained,
 
 
 24
 Moreover, the existing regulatory distortion fosters the inefficient movement of milk by moving such milk over great distances at increased costs. Milk, which would have otherwise served its local markets, is now being moved hundreds of miles in each direction with significant increases in transportation and labor costs, expanded environmental costs and introduced a speculation factor that overrides existing practices of milk marketing.
 
 
 25
 This is directly contrary to the public policies underlying the administration of the pooling program as set forth in the governing statues to promote, foster, and encourage the intelligent production and orderly marketing of fluid milk to eliminate speculation, waste, improper marketing, unfair and destructive trade practices, and improper accounting for milk purchased from producers. Competitive market conditions should determine the movement of milk, not inappropriate regulatory pool provision which otherwise distort the economic signals of the marketplace.
 
 
 26
 Statement of Determination and Order of the Secretary of Food and Agriculture Regarding the Proposed Amendments to the Pooling Plan For Milk Based Upon Public hearings Held On December 6, 1996 and February 4, 1997, A.J. Yates, Undersecretary, California Department of Food and Agriculture, March 21, 1997. This explanation fits the 1997 amendments into the context and purpose of the pricing and pooling laws as a whole. It follows that §§ 144 must also insulate the 1997 amendments from Commerce Clause challenges.
 
 
 27
 Ponderosa and Hillside also contend that Shamrock is inapposite because §§ 144 only affects California's ability to regulate standards for "fluid milk products sold at retail or marketed in the State of California," as opposed to raw milk which is the focus of the present challenge. Ponderosa and Hillside's argument is unpersuasive because §§ 144 applies to "any provision of law" that "directly or indirectly" has an effect on fluid milk. Raw milk and fluid milk are closely related. It follows that the 1997 amendments which directly affect raw milk, indirectly affect fluid milk.
 
 
 28
 To the extent that Shamrock reaches pooling regulations beyond the fortification allowances, Ponderosa and Hillside argue that the holding is dictum and need not be followed. This argument is unpersuasive. Shamrock's holding with respect to the pricing and pooling regulations cannot be dictum because at least some of the pricing and pooling regulations were directly at issue. See United States v. Crawley, 837 F.2d 291, 292-93 (7th Cir. 1988) (citation omitted) (defines dictum as "[a] statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding -that, being peripheral, may not have received the full and careful consideration of the court that uttered it."); see also Batjac Productions Inc. v. Goodtimes Home Video Corp., 160 F.3d 1223, 1232 (9th Cir. 1998). In sum, Ponderosa and Hillside's Commerce Clause arguments are generally inconsistent with our reading of Shamrock. We therefore reject the arguments. "Only an en banc panel may overturn existing Ninth Circuit precedent." Jeffries v. Wood, 114 F.3d 1484, 1492 (9th Cir. 1997).
 
 B. Equal Protection Clause
 
 29
 Ponderosa's amended complaint alleges that the 1997 amendments to the pooling plan violate the Equal Protection Clause of the Constitution. In its entirety, Ponderosa's Equal Protection Clause claim alleges:
 
 
 30
 71. Plaintiffs reallege and incorporate by reference the allegations of paragraph 1 through 70 of this Complaint.
 
 
 31
 72. The stabilization and marketing provision of Div. 21, Pt., 3, Ch. 2 of the Food & Agriculture Code, and/or the pooling provisions of Div. 21, Pt. 3, and Ch. 3.5 of the California Food & Agriculture Code, and the marketing or pooling plans issued thereunder, as construed and applied by defendants herein, violate the 14th Amendment of the Constitution of the United States, relating to equal protection, due process, "taking" of private property, privileges and immunities, and/or other incorporated provisions of the Bill or [sic] Rights.
 
 
 32
 The district court dismissed Ponderosa's claim based on Federal Rule of Civil Procedure ("Rule") 8(a)(2).[7] Nevertheless, the court afforded Ponderosa 20 days to file a second amended complaint to cure the deficiencies. Ponderosa did not file a second amended complaint.
 
 
 33
 Ponderosa argues that it sufficiently pled an Equal Protection Clause claim because its complaint contains 18 paragraphs that illustrate how specific elements of the amended pooling plan discriminate against out-of-state dairies. Specifically, Ponderosa enumerates six distinct ways in which its amended complaint illustrates how the pooling plan treats outof-state producers unequally:
 
 
 34
 1) quota shares only allocated to in-state dairy producers, while out-of-state farmers are not eligible to receive or to purchase the same;
 
 
 35
 2) out-of-state farmers contribute to the revenue pool but are unable to fully participate in the benefits of the pool;
 
 
 36
 3) out-of-state producers are not eligible to benefit from revenue stability guarantees and thus, unlike in-state producers, are not guaranteed to receive a pool price for milk regardless of location or classified values;
 
 
 37
 4) in-state quota holders routinely receive higher prices than do out-of-state producers;
 
 
 38
 5) unlike in-state producers, out-of-state producers are unable to acquire, hold, transfer or sell quota shares; and
 
 
 39
 6) unlike in-state producers, out-of-state producers are not entitled to transportation allowances to off-set costs associated with the transportation of their milk to processing plants.
 
 
 40
 Shamrock recognizes that California has a legitimate interest in establishing pricing and pooling laws. See Shamrock, 146 F.3d at 1183. Where legitimate interests have been identified, a claimant must do more than assert that the laws being challenged establish discriminatory classifications. See id. "[T]he complaint must also allege facts to demonstrate that the classifications are arbitrary or that they are not rationally related to legitimate state interests." Id . Ponderosa did not do so. The allegations that Ponderosa identifies in its complaint highlight allegedly discriminatory practices, but do not, when taken as true, demonstrate why the challenged elements of the plan are arbitrary or why they are not related to legitimate state interests. It follows that Ponderosa's claim was insufficient. Moreover, when afforded the opportunity to amend its complaint to correct the deficiencies therein Ponderosa did not do so. The district court is therefore affirmed. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (dismissal of a complaint is reviewed for abuse of discretion where plaintiff fails to amend the complaint to comply with a court order that requests an amendment).
 
 C. Privileges and Immunities Clause
 
 41
 The district court dismissed Ponderosa's Privileges and Immunities Clause claim because it found that the amended pooling plan does not create any classifications based on residency or citizenship. A district court's dismissal will be affirmed if it appears beyond doubt that the plaintiff-appellant can prove no set of facts that would entitle it to relief. See Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000). Ponderosa contends that district court's decision was in error because the amended pooling plan discriminates against those who produce milk out-of-state which, for all intents and purposes, means those who are residents of other states. We disagree and affirm.
 
 
 42
 The Privileges and Immunities Clause provides "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV §§ 2. The Privileges and Immunities Clause is not the source of federally protected rights. Rather, the Privileges and Immunities Clause "reliev[es] state citizens of the disabilities of alienage in other States and . . . inhibit[s] discriminatory legislation against them by other States." Paul v. Virginia, 75 U.S. 168, 180 (1869). Put another way, the main purpose of the Privileges and Immunities Clause is "to ensure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." Toomer v. Witsell, 334 U.S. 385, 395, 68 S. Ct. 1156, 1162, 92 L.Ed.2d 1460 (1948). It "outlaws classifications based on . . . non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." Id. at 398.
 
 
 43
 The claims of the corporate dairies must be dismissed because corporations may not bring Privileges and Immunities Clause claims. Western and Southern Life Ins. Co., 451 U.S. at 656. There is also no violation with respect to the individual dairy owners because the classifications the pooling plan amendments create are based on the location where milk is produced. The amendments do not, on their face, create classifications based on any individual's residency or citizenship. Consequently, Ponderosa's argument must fail. See Giannini v. Real, 911 F.2d 354, 357 (9th Cir. 1990) ("[d]iscrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause").
 
 
 44
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 William J. Lyons, Jr., is substituted for his predecessor, Ann M. Veneman, as Secretary of the Department of Food & Agriculture for the State of California.
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.
 
 
 [1]
 When this case began, Ann M. Veneman was the Secretary of the California Department of Food and Agriculture.
 
 
 [2]
 The State of Nevada has been permitted to participate as an amicus curiae on behalf of Ponderosa and Hillside dairies.
 
 
 [3]
 Because of this phenomenon, producers, i.e., dairies, had an incentive to sell their milk to processors of Class 1 products and competition for contracts with such processors arose. This competition placed producers in a weak bargaining position vis-a-vis Class 1 processors and forced many to make concessions as a cost of securing contracts with Class 1 processors.
 
 
 [4]
 The calculations are based on the amount of raw milk purchased from any given producer and the end products for which the milk purchased is used. An "in-plant blend price" representing an average price for the milk each processor purchases is also calculated.
 
 
 [5]
 Transportation allowances compensate producers for the cost of hauling milk from the farm to the processing plant. Regional quota allowances are used to encourage the movement of quota milk to Class 1 processing plants and are determined according to the geographical location of dairy farms.
 
 
 [6]
 See supra note 5.
 
 
 [7]
 Rule 8(a)(2) requires "a short and plain statement of a claim showing that the pleader is entitled to relief." According to the district court, Ponderosa's claim was conclusory and its request to rely upon discovery to plead additional facts improper.