## BEECH–NUT NUTRITION CORPORATION, Plaintiff—Appellant,

v.

## GERBER PRODUCTS COMPANY, Defendant—Appellee.

### No. 02–16047.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 2003.

Decided June 4, 2003.

---

_____

Before: HAWKINS and W. FLETCHER, Circuit Judges, and KING,\* Senior District Judge.

## MEMORANDUM \*\*

Beech–Nut Nutrition Corp., a privately held maker of baby food, including infant cereal and jarred baby food, sued Gerber Products Co. alleging violations of federal and state antitrust law. Beech–Nut alleges that Gerber engaged in unlawful maintenance of monopoly power and attempted monopolization under § 2 of the Sherman Act, 15 U.S.C. § 2, primary-line price discrimination under the Robinson–Patman Act, 15 U.S.C. § 13(a), and violations of the California Unfair Practices Act, Cal. Bus. & Prof.Code § 17043, the California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, and the Texas Antitrust Act, Tex. Bus. & Com.Code § 15.05. The district court dismissed Beech–Nut's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). We review a dismissal under Rule 12(b)(6) de novo, *Williamson v. Gen. Dynamics*

*Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000), and we reverse.

Federal Rule of Civil Procedure 8(a) provides that a complaint shall contain "a short and plain statement" of the pleader's claim showing that the pleader is entitled to relief. No claim should be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nor need those facts be set out in detail. "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47; *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). There is no special pleading rule requiring greater factual specificity in antitrust cases. *McLain v. Real Estate Bd.,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 924 (9th Cir.1980). Beech–Nut's complaint satisfies the pleadings requirement of Rule 8(a) because it alleges a theory of predatory pricing that, if proved, would be illegal, and because it sufficiently puts Gerber on notice of the claims against it.

Section 2 of the Sherman Act, 15 U.S.C. § 2, prohibits monopolization and attempted monopolization. The offense of monopolization has two elements: "(1) the

\* The Honorable Samuel P. King, Senior District Judge for Hawaii, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). To demonstrate attempted monopolization Beech–Nut must show "(1) that [Gerber] engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). Section 2(a) of the Clayton Act, as amended by the Robinson–Patman Act, provides: "It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly. . . ." 15 U.S.C. § 13(a). When discriminatory conduct harms direct competitors of the discriminating seller, it is known as "primary-line" price discrimination. *See FTC v. Anheuser–Busch, Inc.*, 363 U.S. 536, 538, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960).

Primary-line injury under the Robinson–Patman Act is of the same general character as predatory pricing schemes prohibited by § 2 of the Sherman Act. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 221, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). To show predatory pricing a plaintiff must prove (1) that the low prices complained of are below an appropriate measure of its rival's costs and (2) that the competitor has (under the Robinson–Patman Act) a reasonable possibility, or (under the Sherman Act) a dangerous probability, of recouping its investment in below-cost prices. *Id.* at 222, 224, 113 S.Ct. 2578.

Beech–Nut has properly pled below-cost pricing by Gerber by alleging that Gerber bid below all potentially relevant measures of its cost for contracts to supply infant cereal in the California, Nevada, and Texas Women, Infants, and Children ("WIC") Supplemental Nutrition Programs. Beech–Nut has offered two theories of recoupment, both sufficient to survive a Rule 12(b)(6) dismissal. Its first theory focuses on the infant cereal market alone. The allegation is that by securing the WIC contracts through below-cost bids Gerber was able to limit competition in the infant cereal market, allowing it to charge illegally higher-than-competitive prices. Beech–Nut's second theory is that the WIC contracts (secured by below-cost bids) allowed Gerber illegally to create or maintain its monopoly in jarred baby food.

In order to successfully recoup losses through higher-than-competitive prices, a firm must have the power to control prices and have sufficient staying power to be able to charge those prices for long enough to make up its losses. *Brooke Group*, 509 U.S. at 225, 113 S.Ct. 2578; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 590–91, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Beech–Nut alleges that Gerber has market power in infant cereal and jarred baby food. The allegation of market power includes not only Gerber's allegedly 70–86% share of the relevant markets, but also barriers to entry. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir.1995) (discussing market power); *cf. Hunt–Wesson Foods*, 627 F.2d at 925 (holding that an allegation of a 65% market share could be the basis for inferring market power and thus defeated a 12(b)(6) motion to dismiss). Beech–Nut also claims that it has been driven from the infant cereal market in Texas and has lost distribution in California.

Because we hold that Beech–Nut has stated a claim under the federal antitrust laws, we reverse the district court's dismissal of Beech–Nut's state-law claims as well. Conduct that violates the federal antitrust laws also violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *see Cel–Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 544 (Cal.1999), and the Texas Antitrust Act, Tex. Bus. & Com.Code § 15.05, *see* Tex. Bus. & Com.Code § 15.04; *Caller–Times Publ'g Co. v. Triad*, 826 S.W.2d 576, 581–88 (Tex.1992). Beech–Nut has alleged that Gerber acted purposefully and has thus stated a claim under the California Unfair Practices Act. Cal. Bus. & Prof. Code § 17043.

**REVERSED and REMANDED.**

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.