Efrain **CLAUDIO GOTAY,**
et al Plaintiffs

v.

**BECTON DICKINSON CARIBE LTD., et al Defendants**

**No. CIV. 01–1088(SEC).**

United States District Court,
D. Puerto Rico.

April 10, 2003.

---

Alberto G. Estrella, Antonio E. Valiente and Kenneth C. Suria–Rivera, Esqs. William Estrella Law Firm, Enrique A. Mirandes, Esq., San Juan, PR, for Plaintiffs.

Frances R. Colón–Rivera, Saldaña & Carvajal, Gloria M. De–Corral–Hernández, Esq., De Corral & De Mier, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendants' motion requesting summary judgment pursuant to Fed.R.Civ.P. 56 (**Docket # 37**). Plaintiff has timely filed an opposition to such motion (**Docket # 43**) and Defendants have filed a reply to said opposition (**Docket # 49**). Upon careful review of the parties' arguments and the applicable law, Defendants' motion will be **GRANTED**.

### Factual Background

Plaintiff Efrain Claudio–Gotay (Claudio) brought the above captioned claim under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and Public Law 80, of May 30, 1976, as amended, 29 P.R. Laws Ann. § 185a *et seq.* ("Law 80") on the grounds that Defendant Becton Dickinson (BD) unjustly dismissed him from his employment on January 22, 1999. Plaintiff argues that his dismissal was a retaliatory action by Defendant because of his reporting of alleged irregularities in the payment of salaries to the plant's security guards by their employer, CM Express Service Corp. ("CM Express"), a subcontractor hired by Becton Dickinson. On the other hand, Defendants argue that his dismissal was due to his crass insubordination and for not meeting the company's expectations. Claudio's parents have also joined as Plaintiffs requesting compensation for their emotional and mental suffering.

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Mil-

ler & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *See also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina Munoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the non-movant, would permit a rational fact finder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the non-movant that the materiality hurdle is cleared." *Martinez v. Colon*, 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994); **the non-movant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions."** *Lawton v. State Mutual Life Assurance Company of America*, 101 F.3d 218, 223 (1st Cir.1996)(emphasis added). Furthermore, **"the non-movant must produce specific facts, in suitable evidentiary form sufficient to limn a trial worthy issue … Failure to do so allows the summary judgment engine to operate at full throttle."** *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991)(emphasis added) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Munoz*, 896 F.2d at 8, *quoting Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.")

### Applicable Law and Analysis

### Fair Labor Standard Act Anti–Retaliation Clause Claim

The FLSA anti-retaliation provision states:

It shall be unlawful for any person to discharge or in any other manner discriminate against any employee because

such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

In *Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir.2000), the Court of Appeals for the Ninth Circuit held that:

The purpose of the anti-retaliation provision is: 1) to provide an incentive for employees to report wage and hour violations by their employers; 2) to prevent fear of economic retaliation by an employer against an employee who chose to voice such a grievance; 3) to ensure that employers are not compelled to risk their jobs in order to assert their wage and hour rights under the Act.

(emphasis added). In *Williamson*, the Court also held that "the FLSA anti-retaliation provision protects not only employees who have filed complaints in court or with an agency but also employees who have complained to their employers."

The elements of a retaliation claim under the FLSA require a showing that: 1) **the plaintiff engaged in a statutorily protected activity**; and 2) his employer thereafter subjected him to an adverse employment action; 3) as a reprisal for having engaged in the protected activity. *See Cordero v. Turabo Medical Center Partnership*, 175 F.Supp.2d 124, 127 (D.P.R.2001) *citing Blackie v. State of Maine*, 75 F.3d 716, 722 (1st Cir.1996). (emphasis added).

In *Valerio v. Putnam Associates Inc.*, 173 F.3d 35 (1st Cir.1999), an employee was asserting her statutory rights to overtime pay and pleaded the protection of the FLSA retaliation provision regarding such pay. The Court of Appeals for the First Circuit held that "the employee's overtime pay would be calculated under FLSA regulation applicable to fixed salary for fluctuating hours and that the FLSA retaliation provision protects an employee who has lodged a written internal complaint with the employer." *Id.* In synthesis, the Court held that the meaning of "filing of any complaint" requires a factual analysis on a case by case basis and includes not only a legal complaint, but also includes internal employee complaints. *Id.* and *See also Williamson*, 208 F.3d 1144. However, in *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir.1999), the Court of Appeals for the Ninth Circuit noted that in *Valerio*, 173 F.3d 35, "the First Circuit went on to state that not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer. Not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of section 215(a)(3)."

Defendant argues that Plaintiff Claudio did not engage in protected activity under the FLSA. The argument is based in the fact that Claudio's report of alleged irregularities on the payment of salaries was not about violations of his employer, Becton Dickinson. As part of the duties of his position, Claudio had to overlook the security guards and approve for payment the invoices sent by CM Express, the company that was subcontracted to provide security. During the course of his employment, Claudio brought to the attention of Becton Dickinson's management alleged irregularities with the method of invoicing and salary payment to the guards from the security company.

However, Plaintiffs argue that due to the employment relationship between Becton Dickinson and CM Express and the First Circuit Court of Appeals' holding in *Baystate Alternative Staffing, Inc. v. Her-*

*man, Secretary of Labor,* 163 F.3d 668 (1st Cir.1998), Defendants can be characterized as co-employers of the security guards.

In *Baystate,* the Court of Appeals for the First Circuit held that "to determine whether an employment relationship exists for the purposes of federal welfare legislation, courts look not to the common law conceptions of that relationship, but rather to the 'economic reality' of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer." *Id.* at 675. Thus, the Court of Appeals concluded that the temporary agency was the "employer" of temporary workers for purposes of the FLSA, notwithstanding the alleged simultaneous employer status of the agency's client companies. *Id.* at 675–76.

The question of "employer" status under the FLSA is one of law. *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983). Under the FLSA, the definition of employer encompasses persons and working relationships that prior to the enactment of the Act were not deemed to fall under the employer-employee category. *Baystate,* 163 F.3d at 675. The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act. *Baystate,* 163 F.3d 668; F*alk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973); *Bonnette,* 704 F.2d at 1469–70. "The determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity... (citations omitted). The touchstone is economic reality". *See Bonnette,* 704 F.2d at 1470 (the Court of Appeals held that under the FLSA, the public social service agencies were "employers" of chore workers providing domestic in-house services to disabled public assistance recipients, where chore workers' wages were paid by agencies, agencies exercised considerable control over structure and conditions of employment, and agencies' power over employment relationship by virtue of their control of purse strings was substantial)

In the instant case, it is uncontested that, the employer of the security guards was CM.Express, the security subcontractors. Moreover, it is also uncontested that Claudio refused to authorize the bills sent by CM Express as ordered by his supervisors on several occasions. Furthermore, Plaintiffs have not presented any allegation or evidence that indicates the contrary or that establishes an employer-employee relationship between Defendant Becton Dickinson and the security guards. It is undisputed that CM Express paid the guards' salaries. Therefore, Becton Dickinson cannot be considered an employer like the public social service agencies in *Bonnette.* The economic reality of the case at bar is that the guards salary was paid by the subcontractor, CM Express. Any alleged overtime owed to the guards was owed by that employer, not Becton Dickinson. Therefore, when Claudio reported the alleged irregularities in the payment of overtime by CM Express to its employees, he was not protecting his own statutory rights under the FLSA. His alleged internal complaint involved the conduct of an employer that was not his own. Becton Dickinson was not the one responsible for the alleged salary violations. Therefore, his reporting of alleged salary payment irregularities by CM Express does not amount to an internal complaint protected under the FLSA. Thus, Claudio does not meet the first element of a retaliation claim under the FLSA because he did not engage in a statutorily protected activity and was not at risk of losing his job with CM Express, since the company was not his employer, nor was it responsible for his salary payments.

504

The purpose of the FLSA is to prevent that the employee risk his job by asserting his statutory rights, not the alleged statutory rights of employees who are not his co-workers, employed by another employer that is not his own. In the instant case, the alleged violator of the FLSA was not Plaintiff's employer but CM Express, the subcontractor. Thus, the Court must conclude that the reason for Claudio's dismissal was a non-retaliatory one and his claim under the FLSA will be **DISMISSED WITH PREJUDICE.**

### Consolidated Omnibus Budget Reconciliation Act (COBRA) Claim

■ Under COBRA, 29 U.S.C. § 1166, continuation coverage is available to "qualified beneficiaries." Qualified beneficiaries include employees and their dependents. *See* 29 U.S.C. § 1167(3). One of several "qualifying events must occur for a qualified beneficiary to receive continuation coverage." 29 U.S.C. § 1163. Termination of employment for any reason other than gross misconduct is one of the qualifying events that entitles an employee to receive continuation coverage. 29 U.S.C. § 1163(2).

When a qualifying event, such as termination, occurs, the employer must notify the plan administrator of the qualifying event within thirty (30) days; the administrator then has fourteen (14) days after it receives notice (or longer if specified in the plan itself) in which to notify the qualified beneficiaries of their right to receive continuation coverage. *See* 29 U.S.C. § 1166. A qualified beneficiary has at least sixty (60) days after the termination of coverage under a benefit plan to elect continuation coverage. He or she must be afforded sixty (60) days from the latter of either the termination of coverage or the receipt of notice to elect continuation coverage. 29 U.S.C. § 1165(1). A qualified beneficiary's election of continuation coverage is effec-

tive as to any other qualified beneficiary who would lose coverage by virtue of the same qualifying event. 29 U.S.C. § 1165(2). The maximum length of time a plan must provide continuation coverage to employees who are terminated is eighteen (18) months from the date of the qualifying event. Continuation coverage may terminate earlier if the qualified beneficiary fails to make timely premium payments, 29 U.S.C. § 1162(2)(C) or if the qualified beneficiary becomes covered under another group health plan. 29 U.S.C. § 1162(2)(D).

■ In *Meadows v. Cagle's Inc.* 954 F.2d 686 (11th Cir.1992), the Court held that the "COBRA notice must be sent to someone capable of acting intelligently on it", but nowhere does it state that the notice itself need do more than make clear that the beneficiary must make an election under COBRA in order to receive continued coverage. In the case of *Hummer v. Sears, Roebuck,* 1994 WL 116117 at *6 (E.D.Pa.1994), the Court held that pertinent federal decisions support the conclusion that the employer's only obligation under COBRA, to notify of the extended coverage, was to provide a good-faith notice of the rights under this Act. Good-faith notification requires nothing more than that plan beneficiaries receive notice of their option to elect continued coverage, that no part of the notice be false or deceptive, and that plan administrators act as fiduciaries in handling inquiries from eligible parties during the COBRA election period. *Id.* In *Lucinda Bixler v. Central Pennsylvania Teamsters Health,* 12 F.3d 1292 (3rd Cir.1993), the Court held that an employer satisfied its fiduciary duty to qualified beneficiaries with respect to COBRA, when the employer had placed the proper address on a notice.

■ Plaintiffs allege that Defendants did not comply with their obligations under

the COBRA. Nonetheless, Defendants have produced with their motion a Sworn Declaration from Paul V. Gutierrez, dated August 6, 2002, in which he states, as custodian of the records of all COBRA notifications, that Defendants did in fact comply with the requirements of COBRA. Defendants have also produced a copy of the official record of the notification which was made to Plaintiff. Plaintiff has not disputed in any way the authenticity of this record, which, in any case has been authenticated by the custodian's sworn declaration.

The Court finds that Becton Dickinson provided good faith notification to Claudio about his rights under ERISA and more specifically, under the COBRA by sending the notification to his address of record. On January 27, 1999, Becton Dickinson sent Claudio the COBRA notification via certified mail, return receipt requested, to his address of record. On March 18, 1999, Becton Dickinson again sent Claudio the COBRA notification via certified mail, return receipt requested to his address of record. On March 18, 1999, the COBRA notification was also personally handed to Cesar Rivera, who picked it up on Claudio's behalf. *See* Defendant's Summary of Uncontested Material Facts at ¶ 20. Plaintiffs' only argument is that he never received said notifications and that Defendant does not have the return receipt. These conclusory allegations are not enough to controvert the evidence presented by Defendants.

As the record evidence reveals, both notices were timely and clearly informed Claudio that he was entitled to continuing coverage if a qualifying event occurred, and provided general information about the possible duration of coverage, payment schedule and cost. Becton Dickinson provided good faith notice to Claudio about his rights under COBRA. These facts establish that there is no genuine issue of a material fact as to the adequacy of the COBRA notification to Claudio. Therefore, Plaintiffs' claim under ERISA for violation of Claudio's rights under COBRA will be **DISMISSED WITH PREJUDICE.**

### Unjust Dismissal Act (Law 80) Claim

■ Plaintiff Claudio invokes this Court's supplemental jurisdiction for his claim under local Law 80. It is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court will decline to exercise supplemental jurisdiction.

It has been stated that the holding in *Gibbs* "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.,* 727 F.Supp. 701, 709 (D.Me. 1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991).

Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be

dismissed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir.1992); *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir.1990); *cf. Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

Supplemental jurisdiction will be declined in this case in view that the state law claims are substantially derived from the same operative facts of the previously dismissed federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon,* 484 U.S. at 350 n. 5, 108 S.Ct. 614, citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. *See also Fabregas v. ITT Intermedia, Inc.,* 13 F.Supp.2d 225, 229 (D.P.R.1998). Accordingly, Plaintiffs' claims under local Law 80 are hereby **DISMISSED WITHOUT PREJUDICE**

### Conclusion

For the herein stated reasons, Plaintiffs' claims under the Fair Labor Standards Act, and the Employee Retirement Income Security Act will be **DISMISSED WITH PREJUDICE**. Furthermore, the Court will not exercise its discretion to entertain the remaining claims under the Commonwealth's Law 80 and, therefore, will **DISMISS WITHOUT PREJUDICE** said claims. Finally, since Claudio's claims of retaliation under the FLSA do not survive as a matter of law, the contingent claims for recovery of emotional and mental suffering brought by Claudio and his parents, Co-plaintiffs Efrain Claudio Cruz and Ella N. Gotay Maldonado will also be **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**