Logan MARR, by her Personal Representative, Christy MARR, and Christy Marr, Plaintiffs,

v.

Sally SCHOFIELD, Defendant.

No. CIV. 01–224–B–C.

United States District Court, D. Maine.

March 2, 2004.

See also 215 F.Supp.2d 261.

Charles Clifton Fuller, III, the Attorneys Office, P.A., Belfast, ME, Ferdinand A. Slater, Ellsworth, ME, for Plaintiffs.

Andrew S. Hagler, Fort Andross, Brunswick, ME, Charles A. Harvey, Jr., Harvey & Frank, Robert S. Frank, Harvey & Frank, Edward R. Benjamin, Jr., Thompson & Bowie, Portland, ME, William R. Fisher, Attorney General's Office, Augusta, ME, Jonathan W. Brogan, Norman, Hanson & Detroy, Portland, ME, E. James Burke, Hark & Andrucki, Lewiston, ME, Thad B. Zmistowski, Eaton Peabody, Bangor, Barri L. Bloom, Richardson, Whitman, Large & Badger, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Senior District Judge.

Plaintiff Christy Marr, in her capacity as personal representative of her deceased daughter, Logan Marr ("Logan"), and on her own behalf ("Plaintiff"), filed this suit in 2001, alleging various civil rights violations and state law tort claims.[1] Before

---

1. Plaintiff's Complaint and Demand for Jury Trial (Docket Item No. 1) originally named a number of defendants (including the State of Maine, Department of Human Services and various individuals). At this stage in the proceedings, the only remaining defendant is Sally Schofield ("Defendant"). Of the 27 counts initially set forth in the Complaint, only eight remain: Counts I, II, V, and IX (each for deprivation of civil rights); Count XIV (assault); Count XV (battery); Count XVI (wrongful death); and Count XVII (intentional infliction of emotional distress). Although Plaintiff's summary judgment motion also references Counts VII and XIII, these counts

the Court now is Plaintiff's Motion for Partial Summary Judgment and to Collaterally Estop Defendant Schofield from Re–Litigating Those Facts Found at Trial in Her State Criminal Conviction for Manslaughter, as well as Defendant Sally Schofield's Objection and Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment (Docket Item Nos. 46 and 48, respectively). For the reasons set forth below, with respect to Plaintiff's § 1983 claims (Counts I, II, V, and IX), the Court will deny Plaintiff's motion for partial summary judgment and grant Defendant's motion for partial summary judgment. Further, the Court will decline to exercise its supplemental jurisdiction over Counts XIV, XV, XVI, and XVII and dismiss them without prejudice.

## I. Facts

The undisputed facts before the Court on these summary judgment motions are as follows. In 2000, Sally and Dean Schofield went through the process of obtaining approval to adopt two children through the Maine Department of Human Services. Defendant's Statement of Additional Material Facts ¶ 1. The Schofields received approval to adopt two children, but they did not apply for or obtain a license to be a foster family. *Id.* ¶ 2. Logan and Bailey Marr were placed with the Schofields as foster children, and the Schofields' intent was to adopt them if and when the Department of Human Services obtained a termination of parental rights. *Id.* ¶ 3. At the time of Logan's death, she and Bailey were still foster children. *Id.* The State of Maine did not pay the Schofields to be

foster parents; they received a *per diem* board rate payment, reimbursement for child care expenses, and an allowance for clothing. *Id.* ¶ 4. The State also paid the girls' medical expenses. *Id.* This was the only money that the Schofields received from the State. *Id.* As foster parents, the Schofields had guidelines from the State regarding the care of the girls, but the State did not supervise or control their care of the girls. *Id.* ¶ 5.

Logan Marr is dead. Plaintiff's Statement of Material Facts ("PSMF") ¶ 5. Defendant was charged by indictment with murder (depraved indifference, 17–A M.R.S.A. § 201(1)(B) (1983)) and manslaughter (reckless or criminal negligence, 17–A M.R.S.A. § 203(1)(A), Class A (1983)) in Kennebec County Superior Court arising out the death of Logan Marr at Defendant's home in Chelsea, Maine on January 31, 2001. *Id.* ¶ 1. Defendant waived jury trial, and the matter was tried before Justice Thomas Delahanty beginning on June 18, 2002. *Id.* ¶ 3. Defendant was acquitted of the murder charge. *Id.* With respect to the manslaughter charge, the burden at trial was on the prosecution to prove beyond a reasonable doubt that Defendant was guilty of causing Logan's death by reckless or criminally negligent conduct. *Id.* ¶ 4. Justice Delahanty found that:

> The defendant was clearly aware of her responsibilities and limitations and consciously disregarded a risk that her conduct would cause harm to Logan, including serious injury or even death. She was fully aware of the attendant circumstances and the risk that her conduct presented and consciously disregarded that risk. [T]his court has no difficulty

were not among the list of outstanding counts against Defendant that was subsequently provided by Plaintiff (pursuant to Magistrate Judge Kravchuk's October 24, 2002, Report of Telephone Conference and Amended Scheduling Order (Docket Item No. 41)). *See* Status

Report re: Remaining Counts against Sally Schofield (Docket Item No. 60). Accordingly, the Court will not consider Counts VII and XIII. Plaintiff seeks summary judgment with respect to liability on each of the remaining eight counts against Defendant.

finding that Ms. Schofield's conduct was a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

*Id.* ¶ 11. Justice Delahanty further held that the prosecution had "proven beyond a reasonable doubt that, even though the nose was not totally blocked by tape, Logan Marr died as a result of asphyxia that was directly caused by the reckless conduct of the defendant." *Id.* ¶ 12. On June 25, 2002, Defendant was found by a judgment of the Kennebec County Superior Court to have caused the death of Logan Marr and was convicted of the offense of manslaughter under Maine law. *Id.* ¶¶ 13–14 and Ex. A at 10.

## II. Standard

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). " 'Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden has been met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). Cross motions for summary judgment do not alter the basic standard for summary judgment; rather, they require the court to determine whether either of the parties deserves judgment as a matter of law on the undisputed facts. *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001).

## III. Discussion

Plaintiff moves for summary judgment on her remaining counts and seeks an order from this Court that Defendant is collaterally estopped from litigating those facts found by the Kennebec County Superior Court in her criminal trial. It is Plaintiff's position that the Kennebec County Superior Court found, beyond a reasonable doubt, all of the undisputed facts necessary to prove the remaining counts against Defendant, and Plaintiff asserts that she is entitled to summary judgment as a matter of law with respect to Defendant's liability on all of her remaining counts. Defendant argues in the first instance that she is entitled to summary judgment on Counts I, II, V, and IX, which set forth claims for civil rights violations under § 1983, because Defendant is not a state actor. Further, Defendant opposes Plaintiff's motion for partial summary judgment, arguing that only matters that were actually litigated and necessarily decided in the criminal trial are entitled to the effects of collateral estoppel in this case. Defendant asserts that the manslaughter conviction left open many of the

factual issues necessary to Plaintiff's success on the remaining counts in this case.

The Court first addresses Defendant's motion for partial summary judgment on the ground that Defendant is not a state actor and concludes that Defendant is entitled to partial summary judgment on this basis. The Court will not reach the parties' substantive arguments regarding Plaintiff's state law claims because, having disposed of Plaintiff's federal claims, the Court will decline to exercise its supplemental jurisdiction over these claims.

### A. State Action

Counts I, II, V, and IX arise under 42 U.S.C.A. § 1983, which permits plaintiffs to seek redress for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983. To succeed on a § 1983 claim, the plaintiff must show that the deprivation was caused by a person acting "under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *Id.* Because § 1983 is aimed at state actors, "persons victimized by the tortious conduct of private parties must ordinarily explore other avenues of redress." *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 253 (1st Cir.1996). "To be sure, the rule is not absolute: private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983." *Id.* at 253–54.

The Court of Appeals for the First Circuit looks to several different doctrines to evaluate whether a private party's conduct falls under the color of state law, and these doctrines have been summarized in *Howard v. Malac,* 270 F.Supp.2d 132 (D.Mass. 2003). In *Howard,* the court wrote:

The First Circuit has recognized the following specific doctrines under which a private actor can be considered a state actor: (1) the public function doctrine, under which a private entity is deemed a state actor if it is performing an exclusively public function, *Logiodice v. Trustees of Maine Cent. Inst.,* 296 F.3d 22, 26 (1st Cir.2002); (2) the "nexus" doctrine, under which a private entity is deemed a state actor if the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the challenged conduct fairly can be attributed to the State," *Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 19 (1st Cir.1999) (internal citations and quotation marks omitted); (3) the "symbiotic relationship" doctrine, under which a private entity is deemed a state actor if the State "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity," *id.* at 21 (internal citations and quotation marks omitted); and (4) the "entwinement" doctrine, under which a private entity can be classified as a state actor when "it is entwined with governmental policies or when government is entwined in [its] management or control," *Logiodice,* 296 F.3d at 27 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)).

*Howard v. Malac,* 270 F.Supp.2d 132, 143–44 (D.Mass.2003).

After summarizing the relevant doctrines, the *Howard* court noted that "[i]n general, these doctrines yield the result that a foster parent cannot be considered a state actor." *Id.* at 144. A number of courts have reached the conclusion that a foster parent is not a state actor. *See, e.g., Rayburn v. Hogue,* 241 F.3d 1341, 1347–48 (11th Cir.2001); *Milburn v. Anne Arundel County Dep't of Social Services,* 871 F.2d 474, 479 (4th Cir.1989); *P.G. v. Ramsey County,* 141 F.Supp.2d 1220, 1226

(D.Minn.2001); *Walker v. Johnson*, 891 F.Supp. 1040, 1051 (M.D.Pa.1995); *Lintz v. Skipski*, 807 F.Supp. 1299, 1307 (W.D.Mich.1992); *McCrum v. Elkhart County Dep't of Pub. Welfare*, 806 F.Supp. 203, 208 (N.D.Ind.1992); *Pfoltzer v. County of Fairfax*, 775 F.Supp. 874, 891 (E.D.Va.1991). However, the *Howard* court found itself faced with a particular factual situation that caused the court to reach the opposite conclusion. In *Howard*, the plaintiff's complaint included allegations that state officials knew that the foster parent was abusing the child and that they colluded with the foster parent to cover up the abuse. *Howard*, 270 F.Supp.2d at 144. Applying the standard applicable to motions to dismiss, the court concluded that, under the "nexus" and "entwinement" tests, the plaintiff had alleged the necessary connection between the state and the foster parent's child abuse to potentially render the foster parent a state actor at trial. *Id.* at 145–46.

Other courts have indicated that foster parents may be state actors when the foster parents act in concert with other state actors or where the state knew or should have known that the placement of the child posed a danger to the child. *See, e.g., K.H. v. Morgan*, 914 F.2d 846, 852 (7th Cir.1990) (foster parent is state actor only when state knows or suspects foster parent is a child abuser); *Hawley v. Nelson*, 968 F.Supp. 1372, 1388 (E.D.Mo.1997) (without allegations that they acted in concert with other state actors, defendants "standing alone in positions of foster parents" were not state actors); *Del A. v. Roemer*, 777 F.Supp. 1297, 1318 (E.D.La. 1991) ("[T]he foster parent is deemed a 'state instrument' only if the State places the child in a setting it knows or should have known was unsafe."). However, in the instant case, Plaintiff has made no showing that Defendant colluded with state actors to abuse Logan or cause her death, or to cover up any abuse of Logan

at Defendant's hands, nor has she shown that the State of Maine knew or should have known that Defendant's home was unsafe. Instead, Plaintiff argues that Defendant is a state actor because foster care in Maine is created by Maine statutes and regulations, foster parents receive payments from the State of Maine, foster parents are governed by rules and regulations promulgated and enforced by the Department of Human Services, and the Department of Human Services removed Logan from Plaintiff Christy Marr's custody and placed her in Defendant's home.

These sorts of arguments have not been successful in other jurisdictions, and they are not persuasive to this Court. *See, e.g., Walker*, 891 F.Supp. at 1051 ("While it is true that foster parents are required to be licensed and are subject to state controls and receive state monies for the care of the children in their charge, those factors alone do not render them state actors for section 1983 purposes."). Courts generally have agreed that foster parents do not perform a function that is reserved exclusively to the state. *See, e.g., Rayburn*, 241 F.3d at 1347; *Milburn*, 871 F.2d at 479; *Howard*, 270 F.Supp.2d at 144. Further, this Court agrees with the *Howard* court that the relationship between a state and foster parents therein is not symbiotic in nature. *See Howard*, 270 F.Supp.2d at 145 (rejecting "the view that the state insinuates itself into the daily activities of foster parents to the extent that they are transformed into state actors"). The "nexus" and "entwinement" tests require a court to "focus specifically on the state's involvement in the challenged conduct at issue." *Id.* Here, there is no claim or showing that the state was a joint participant in any abuse suffered by Logan while she was placed with Defendant, or that Defendant's abusive conduct toward Logan was entwined with that of state actors. Accordingly, Plaintiff has not established, through application of any of the available

tests, that the deprivation at issue was perpetrated by a state actor.[2]

Plaintiff has made no factual assertions, either as part of her own summary judgment motion or in response to Defendant's summary judgment motion, that allow the Court to conclude, in the present state of First Circuit authority, that Defendant is a state actor for purposes of Plaintiff's § 1983 claims against Defendant. Accordingly, the Court will grant summary judgment in favor of Defendant on Counts I, II, V, and IX.

### B. Supplemental Jurisdiction

The Court has exercised supplemental jurisdiction over Plaintiff's state law claims for assault, battery, wrongful death, and intentional infliction of emotional distress because they form part of the same case or controversy as Plaintiff's claims under § 1983, over which the Court has original jurisdiction. *See* 28 U.S.C.A. § 1367(a). "In a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256–57 (1st Cir.1996); *see also* 28 U.S.C.A. § 1367(c). "[I]n the usual case in which all federal claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward de-

clining to exercise jurisdiction over the remaining state law claims." *Claudio Gotay v. Becton Dickinson Caribe Ltd.,* 257 F.Supp.2d 498, 505 (D.P.R.2003). After granting summary judgment in favor of Defendant on all of Plaintiff's outstanding federal claims and considering the competing factors, the Court declines to continue to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. In doing so, the Court notes that Plaintiff is free to pursue her state law claims in state court. *See* 28 U.S.C.A. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.")

### IV. Conclusion

It is ORDERED that

(1) Plaintiff's Motion for Partial Summary Judgment be, and it is hereby, **DENIED** with respect to Counts I, II, V, and IX;

(2) Defendant's Motion for Summary Judgment be, and it is hereby **GRANTED** as to Counts I, II, V, and IX; and

(3) Counts XIV, XV, XVI, and XVII be, and they are hereby, **DISMISSED** without prejudice.

---

**2.** Plaintiff argues that Defendant's situation is analogous to that of a physician who has contracted with the state to provide medical care to prison inmates, and, in particular, Plaintiff urges the Court to consider *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (holding that such a physician was a state actor under § 1983). However, the Court is not persuaded that foster parents are in an analogous position with such physicians, who have entered into a fee-for-services arrangement with the state to

provide medical care to prisoners housed in state facilities. By contrast, Defendant, as a foster parent, had not entered into a contractual relationship with the State of Maine, nor was she paid for her foster care services. Rather, she was reimbursed for the expenses (including board) of the foster children placed in her home. In light of these differences, the Court is not persuaded that it should disregard the precedent of the case law regarding foster parents.